1

2

3

4

5

6

7

8                      **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   RON PISTORESI                                CASE NO. CV-F-08-843-LJO-DLB

12              Plaintiff,                        **ORDER ON DEFENDANTS' MOTIONS TO**
                                                  **DISMISS AND STRIKE** (Docs. 46, 51, 53)
13          v.

14   MADERA IRRIGATION DISTRICT,
15   CARL JANZEN, JAMES ANTHONY
      CAVALLERO, and GARY BURSEY,
16
             Defendants.
17
     _____/
18

19                                  __INTRODUCTION__

20          Defendants Madera Irrigation District ("MID"), Carl Janzen ("Mr. Janzen"), James Anthony

21   Cavallero ("Mr. Cavallero") and Gary Bursey ("Mr. Bursey") (collectively "defendants") move to

22   dismiss (Doc. 56) and moved to strike (Docs. 51, 53) plaintiff Ron Pistoresi's ("Mr. Pistoresi's") first

23   amended complaint ("FAC") (Doc. 45).  Defendants move to dismiss Mr. Pistoresi's federal claim

24   pursuant to Fed. R. Civ. P. 12(b)(6), move to strike Mr. Pistoresi's state claim pursuant to Cal. Code Civ.

25   Proc. §425.16, California's "anti-SLAPP statute," and move to strike his punitive damages claim

26   pursuant to Fed. R. Civ. P. 12(f).  Both parties offer substantial evidence outside of the complaint to

27   support their positions.  For the following reasons, this Court GRANTS defendants' motion to dismiss,

28   GRANTS defendants' special motion to strike, and DENIES as moot defendants' motion to strike.

                                              1

1

**BACKGROUND**

2

**Factual Allegations in the Complaint**

3       Mr. Pistoresi asserts a single civil rights cause of action pursuant to 42 U.S.C. §1983 ("Section

4   1983") and Cal. Civ. Code §52.1 ("Section 52.1").  Mr. Pistoresi's claims are based on an alleged

5   conspiracy between MID, Mr. Bursey, Mr. Janzen and Mr Cavallero to prevent Mr. Pistoresi from

6   speaking at, and attending, MID Board of Directors ("Board") meetings.

7       In 2007, Mr. Bursey, Mr. Janzen and Mr. Cavallero voted to suspend Mr. Pistoresi as a member

8   of the MID Board.  Thereafter, Mr. Janzen wrote a letter to Mr. Pistoresi to inform him that he was

9   suspended from the MID Board and would not be allowed to attend future MID Board meetings.

10  Defendants voted to suspend Mr. Pistoresi as a Board member to prevent him from speaking at or

11  attending MID Board meetings.  MID cancelled Board meetings that Mr. Pistoresi was entitled to attend

12  and held secret meetings without providing notice to Mr. Pistoresi.  In addition, MID withheld Board

13  information from Mr. Pistoresi

14      Additionally, MID hired a private security company and instructed that company to prevent Mr.

15  Pistoresi from attending MID Board meetings.  MID instructed the private security company to use force

16  against Mr. Pistoresi if he attempted to enter the building where MID Board meetings were held.  The

17  security company manager informed Mr. Pistoresi that he had been instructed to use physical force

18  against Mr. Pistoresi should he attempt to enter the building where the MID Board meetings are held.

19  Mr. Pistoresi was intimidated by defendants' threat of physical force, and did not attempt to attend

20  further MID Board meetings, nor did he speak publically about MID issues.

21

**Factual Allegations by Defendants**

22      Defendants submit several documents in support of their motions to dismiss and strike.

23  Defendants allege that on June 18, 2007, Mr. Pistoresi assaulted and battered Alan Turner ("Mr.

24  Turner"), then General Manager of MID, at the MID offices.  Two days later, the MID Employees'

25  Association wrote a letter to the Madera County District Attorney, expressing fear for their safety in the

26  workplace as a result of Mr. Pistoresi's behavior.  As a result of that letter, the MID Board filed a

27  "Petition of Employer for Injunction Prohibiting Violence Against Employees Pursuant to California

28  Code of Civil Procedure 527.8" ("Petition") against Mr. Pistoresi on June 26, 2007.

2

The MID Board then voted to suspend Mr. Pistoresi from the MID Board temporarily, pending investigation of the employees' allegations against him.  Defendants submit a certified copy of Madera Irrigation District Resolution No. 2007-08, which reads in pertinent part:

> **WHEREAS**, in light of the June 18, 2007 altercation between Director Pistoresi and Alan Turner, the District's General Manager, and allegations in the MID Employee letter to the District Attorney dated June 20, 2007, the District's duty as an employer to provide a healthy, safe, and secure work environment for employees, the additional information received by the MID Board regarding Director Pistoresi's conduct, and the information regarding irregularities in MID's regular course of business,
>
> **NOW, THEREFORE, BE IT RESOLVED THAT THE BOARD WILL**:
> 1. Conduct an investigation into Director Pistoresi's conduct.
> 2. Suspend Director Pistoresi from his duties as an MID Director, including suspension from all committees and acting on behalf of MID in any way.
> 3. Compensate Director Pistoresi for any MID Board meetings conducted during his suspension.
> 4. Director Pistoresi's suspension shall commence at the close of this Board meeting and shall conclude upon completion of the investigation.

Declaration of Thomas Brazier ("Brazier Decl."), Exh. D.  Resolution 2007-08 was adopted by the MID Board at a special meeting held on June 28, 2007. *Id*.  Mr. Cavallero, Mr. Bursey, and Mr. Janzen voted in favor of the resolution. *Id.*

Defendants also submit the July 2, 2007 letter Mr. Janzen wrote to Mr. Pistoresi to inform him of the MID Board decision to suspend him.  The letter reads:

> As a result of the June 18, 2007 altercation between District General Manager Alan Turner and you, the June 20, 2007 Madera Irrigation District Employee Association's letter, and subsequent interviews with Madera Irrigation District Employees, MID is faced with serious allegations and such allegations we believe create a duty to take affirmative steps to ensure a safe and secure work environment.  MID has a duty to protect the health, safety and welfare of its employees as well as to continue Board business in an orderly manner.
>
> In light of these allegations, the Board has temporarily suspended you as a Director pending a complete investigation of the allegations raised and other irregularities in MID's regular course of business recently brought to our attention.  Pending this suspension, you will be compensated for any MID Board meetings held, to the extent allowed by law.
>
> We regret having to take this action and intend to move as swiftly as possible to investigate all allegations.

*Id.*

After a bench trial, the state court judge entered judgment against MID on May 30, 2008.  Brazier Decl., Exh. F.  The state court denied MID's request for a permanent injunction against Mr. Pistoresi because, in light of the facts that Mr. Pistoresi chose not to stand for re-election to the MID Board, and

1  Mr. Turner was no longer employed by MID, MID did not prove by clear and convincing evidence that

2  Mr. Pistoresi posed a credible threat of future violence against MID employees. *Id*.

3  **Additional Factual Allegations by Mr. Pistoresi**

4       Mr. Pistoresi includes additional facts and several documents to support his oppositions to the

5  pending motions.  Mr. Pistoresi acknowledges that on the evening of  June 18, 2007, a pushing and

6  shoving match occurred between him and Mr. Turner.  After the June 18, 2007 incident, both Mr.

7  Pistoresi and Mr. Turner sought to obtain injunctive relief against each other.  Thereafter, defendants

8  initiated the employer injunction action against Mr. Pistoresi.  Mr. Bursey, Mr. Janzen, and Mr.

9  Cavallero executed declarations in support of the action indicating that they fear Mr. Pistoresi.

10       The state court judge issued a temporary restraining order ("TRO") against Mr. Pistoresi on June

11  28, 2007 that included, in pertinent part:

12       Defendant is allowed to enter MID offices...for the limited purpose of participation in MID Board meetings as a Director and/or public meetings Defendant
13  attends as a MID committee member and during the fifteen minutes prior to and after such meetings.

14  
15       MID Board meetings may be videotaped.

16       Any request for materials other than Board Agenda packets supporting any item as listed on the MID Board Agenda shall be submitted in writing by counsel for
Defendant and sent to counsel for Plaintiff MID.  Board packets and meeting notices
17  shall be provided to counsel for Defendant.

18  Declaration of Ron Pistoresi, Ex. A.  Later that day, on the evening of June 28, 2007, the MID Board

19  voted to suspend Mr. Pistoresi as a director, and to exclude him from all future meetings.

20  **Procedural History**

21       Mr. Pistoresi initiated this action on June 17, 2008.  This Court dismissed Mr. Pistoresi's original

22  complaint on November 25, 2008.  Order on Defendants' Motions to Dismiss and Strike and Motion for

23  Sanctions, filed November 25, 2008 ("Order to Dismiss") (Doc. 44).  Thereafter, Mr. Pistoresi filed his

24  FAC on December 10, 2008.  Defendants moved to dismiss and strike the FAC on December 24, 2008

25  and December 29, 2008.  Mr. Pistoresi opposed the motions on January 15, 2009.  Defendants replied

26  on January 22, 2009.  The Court found this motion suitable for decision without a hearing, vacated the

27  January 29, 2009 hearing pursuant to Local Rule 78-230(h), and issues the following order.

28  ///

**SUPPORTING DOCUMENTS**

Defendants submit the following documents as exhibits to the Declaration of Thomas S. Brazier ("Brazier Decl.") in a "Request for Judicial Notice in Support of Motion to Dismiss, Motion to Strike, and Special Motion to Strike First Amended Complaint:"

A.   June 20, 2007 Letter from Dennis Flippo to Mr. LiCalsi, Re: Madera Irrigation District Incident of June 18, 2007 ("MID Employees' Letter");

B.   Petition of Employer for Injunction Prohibiting Violence or Threats of Violence Against Employee, filed July 5, 2007 ("Petition"), including two declarations from MID employees;

C.   Order to Show Cause and Temporary Restraining Order, filed June 28, 2007, in MID v. Pistoresi, Madera Superior Court ("TRO"), including seven declarations from MID employees and two declarations from MID Board members;

D.   Documents related to Board Suspension, including: July 2, 2007 letter from Mr. Janzen to Mr. Pistoresi re: Suspension from Board ("Janzen Letter"); MID Board of Directors Special Meeting Minutes; MID Resolution No. 2007-08;

E.   Madera Tribune newspaper article, April 8, 2008, "Pistoresi Granted Dismissal, MID loses in attempt to keep its ex-board chairman away ("Madera Tribune Article");"

F.   Notice of Entry of Judgment, filed May 3o, 2008, MID v. Pistoresi, Turner v. Pistoresi, Pistoresi v. Turner, Madera County Superior Court ("Injunction Judgment") and Statement of Decision, filed May 14, 2008,  MID v. Pistoresi, Turner v. Pistoresi, Pistoresi v. Turner, Madera County Superior Court ("Injunction Decision");

G.   Declaration of Michael Campos in Support of Motion to Dismiss and Strike, filed October 3, 2008 in the above-titled action; and

H.   Order on Defendants' Motions to Dismiss and Strike and Motion for Sanctions, filed on November 25, 2008 in the above-titled action ("Order to Dismiss").

In opposition to the motions to dismiss and strike, Mr. Pistoresi submits a declaration from Mr. Pistoresi, ("Pistoresi Decl.") and includes the following documents for this Court's review:

A.   Temporary Restraining Order, dated June 28, 2007, issued by Madera County Superior

5

1     Court ("TRO");

2     B.     June 28, 2007 Letter to Mr. Campos from Mr. Pistoresi's attorney, Re: Closed Session

3            Exclusion for June 28, 2007 Special Meeting;

4     C.     July 6, 2007 Letter to MID Board of Directors from Mr. Pistoresi's attorney, Re: Request

5            for Correction of Action–Government Code section 54960.1;

6     D.     Deposition excerpts of deposition taken in the employment injunction action: Deposition

7            of Cyndi Rascoe, January 10, 2008; Deposition of Darren Garcia, January 23, 2008;

8            Deposition of Leslie Allan Turner, January 22, 2008;  Deposition of Gary Bursey,

9            January 18, 2008; Deposition of Jill Nardine Low, January 14, 2008; Deposition of

10           Dennis Savala, January 24, 2008; Deposition of James Cavallero, January 23, 2008;

11           Deposition of Michael Hearn Cunningham, January 17, 2008; Deposition of Carl Janzen,

12           January 17, 2008; Deposition of Ray Flippo, January 14, 2008;

13    E.     Reporter's Transcript of Trial Proceedings in employment injunction action, excerpts,

14           February 19, 2008, February 20, 2008; February 21, 2008, and March 4, 2008.

## DISCUSSION

### Motion to Dismiss–Federal Claim

#### Standard of Review

18           A Fed. R. Civ. P ("Rule")12(b)(6) motion to dismiss is a challenge to the sufficiency of the

19    pleadings set forth in the complaint.  A Rule 12(b)(6) dismissal is proper where there is either a "lack

20    of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

21    *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In resolving a Rule 12(b)(6)

22    motion, the court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept

23    all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove facts to support

24    a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).

25           Rule 8(a)(2) "requires a complaint to include a short and plain statement of the claim showing

26    that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the

27    ground upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).  "[A]

28    plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

1   conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct.

2   at 1964-65.

3                    **Request for Judicial Notice and Conversion to Summary Judgment**

4          Defendants move to dismiss Mr. Pistoresi's federal claim pursuant to Rule 12(b)(6), but include

5   the documents described above to support the motion.  Defendants request this Court to take judicial

6   notice of exhibits A-H and to consider them without converting this motion to a summary judgment

7   motion.  Mr. Pistoresi argues that defendants converted the motion to summary judgment by submitting

8   evidence outside of the complaint to support their additional allegations.  Mr. Pistoresi then includes

9   evidence to support his additional allegations, and argues this Court should consider his additional

10  evidence, as well.  Defendants oppose Mr. Pistoresi's request to convert this motion to summary

11  judgment.

12         "As a general rule, a district court may not consider any material beyond the pleadings in ruling

13  on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  This Court

14  is limited to assessing the legal sufficiency of allegations contained within four corners of complaint.

15  *Jojola v Chavez*, 55 F.3d 488 (10th Cir. 1995); *see also*, *Balisteri*, 901 F.2d at 699 (the Court only

16  considers those facts and allegations set forth in the complaint in Rule 12(b)(6) motion).  "*If*, on a motion

17  under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the

18  court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

19  However, a "Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as

20  one for summary judgment until the district court acts to convert the motion by indicating that it will not

21  exclude for its consideration of the motion the supporting materials." *Finely Lines Joint Protective Bd.*

22  *Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (9th Cir. 1997).

23         There are two exceptions to the requirement that consideration of extrinsic evidence converts a

24  motion to dismiss to a summary judgment motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th

25  Cir. 2001).  First, judicially noticed facts may be considered on a motion to dismiss.  *Mullis v. United*

26  *States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  Federal Rule of Evidence 201 allows for

27  judicial notice to be taken of facts that are "not subject to reasonable dispute" because it is "capable of

28  accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

1  This Court may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence

2  201. *MGIC Idem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  Second, a court may consider

3  "material which is properly submitted as part of the complaint." *Branch v. Tunnell*, 14 F.3d 449, 453

4  (9tn Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th

5  Cir. 2002).  "If the documents are not physically attached to the complaint, they may be considered if

6  the documents' authenticity...is not contested and the plaintiff's complaint necessarily relies on them."

7  *Lee*, 250 F.3d at 688 (internal quotations and citations omitted).

8       As set forth above, this Court may take judicial notice of matters of public record, and consider

9  them in a motion to dismiss. *MGIC Idem. Corp.*, 803 F.2d at 504.  Accordingly, this Court can take

10  judicial notice of the TRO, the Injunction Judgment and Injunction Decision, MID Board Resolution

11  2007-08, and this Court's Order to Dismiss.  The Court may also consider the Janzen Letter and

12  Resolution 2007-08, as Mr. Pistoresi's FAC relies on them and the authenticity is not contested.  The

13  Court does not take judicial notice of any declarations or deposition testimonies provided by the parties,

14  as they are not matters of public record and assert contested facts.  The Court does not take judicial

15  notice of any disputed facts contained in the documents cited above.  Similarly, the Court may take

16  judicial notice of the Injunction Decision, "not for the truth of the facts recited therein, but for the

17  existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.

18  3d at 690.  Accordingly, the Rule 12(b)(6) motion is not converted to a motion for summary judgment.

19  *Swedberg v. Marotzke*, 339 F.3d 1139, 1142-45 (9th Cir. 2003).

20                                  **Section 1983 claim**

21       Mr. Pistoresi asserts a cause of action against defendants pursuant to 42 U.S.C. §1983.  Section

22  1983, which authorizes the redress for violations of constitutional and statutory rights, is not itself a

23  source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred by

24  the United Statues Constitution and federal statutes. *Baker v. McCollan*, 443 U.S. 137 (1979).  To state

25  a claim for relief under Section 1983, Mr. Pistoresi must demonstrate that the defendants: (1) were acting

26  under color of state law, and (2) deprived him of a right, privilege, or immunity secured by the

27  Constitution or laws of the United States. *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003) (citing

28  *Tongol v. Usery,* 601 F.2d 1091, 1097 (9th Cir. 1979)).

1    Defendants argue that Mr. Pistoresi's Section 1983 claim must fail, because they are not state

2    actors, did not act under color of state law, and Mr. Pistoresi's factual allegations do not support his

3    claim that there was a Constitutional violation.  Defendants further claim qualified immunity.  The Court

4    considers defendants' arguments below.

5                                           **MID as State Actor**

6    MID was formed in 1920 for the purpose of supplying water to farmers in its service area.  *See*

7    *Bottoms v. Madera Irrigation Dist.*, 74 Cal. App. 681 (1922).  MID is organized under the Irrigation

8    District Law of the State of California.  Cal. Water Code §§20500-29978.  Under California's Irrigation

9    District Law, MID is authorized to maintain ditches, make irrigation water available through a system

10   of canals, maintain canals, levy and assess fees, and take other action necessary to otherwise put to

11   beneficial use the waters within the district.  See Water Code §§22075-22186 (enumerating irrigation

12   districts' general powers and purposes).

13   Irrigation districts "are state agencies formed and existing for governmental purposes." Cal.

14   Water Code §20570; *Moody v. Provident Irrigation Dist.*, 12 Cal. 2d 389, 394 (1938) ("It is settled law

15   that an irrigation is a governmental agency, and that is has such powers, and is subject to such liabilities

16   as are expressly provided by statute.").  MID, as a California irrigation district, is also classified as a

17   "public municipal corporation[]." *Tulare Irrigation Dist. v. Shepard*, 185, U.S. 1, 13 (1902); *Bottoms*

18   *v. MID*, 74 Cal. App. At 694-95 ([I]rrigation districts are public corporations or agencies).

19   Defendants argue that "the mere fact that MID is a public irrigation district and the individually

20   named Defendants are MID Board members does not mean each acted 'under color of state law' or

21   engaged in 'state action' within the meaning of Section 1983." Defendants claim that MID acted within

22   its proprietary function, rather than government function, when they voted to suspend Mr. Pistoresi from

23   the MID Board.  Defendants contend that the allegations were not "state action," because under the

24   "nexus" test, there is not a sufficiently close nexus between the State and the challenged action.  Opening

25   Memo, 7.

26   The case relied on by defendants, *Gorenc v. Salt River Project Agricultural Improv. and Power*

27   *Dist.*, 869 F.2d 503 (1989), is distinguished from the instant action.  In *Gorenc*, the Court relied on

28   Arizona state law that held that the specific organization in that case "is not a political sovereign for all

9

1   purposes." *Id*. at 507.   Defendants cite no California case law similarly characterizing California

2   irrigation districts.   Additionally, the instant case does not involve an employment issue, as in *Gorenc*.

3   Moreover, whether certain action is "under color of law" or "state action" is a question of federal law.

4   *Marshall v. Sawyer*, 301 F.2d 639, 646 & n.5 (9th Cir. 1962).

5           Having considered the applicable standards, this Court finds that MID is a state actor for Section

6   1983 purposes.   Section 1983 liability attaches to "individuals who carry a badge of authority of a State

7   and represent it in some capacity." *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002).   Here, Mr.

8   Pistoresi complains of the actions of MID and its Board members, who voted to suspend Mr. Pistoresi

9   as a Board member.   MID is a "state agenc[y] formed and existing for governmental purposes." Cal.

10  Water Code §20570.   Mr. Janzen, Mr. Bursey, and Mr. Cavallero, as MID Board members, are elected

11  officials to a state agency.   In that capacity, they represent the State.   Defendants used the authority given

12  to them under the laws of California to vote to suspend Mr. Pistoresi by adopting MID Resolution 2007-

13  08.   A Section 1983 plaintiff must show only that a defendant's action are "fairly attributable to the

14  government." *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989).   Here, the actions are not only

15  "fairly attributable" to the government, they *are* government actions.   *Accord, Aberdeen-Springfield*

16  *Canal Co. v. Peiper*, 133 Idaho 82, 92 (1999) ("Idaho Code classifies irrigation districts as political

17  subdivisions of the state, which are inherently state actors. The irrigation district's status as a state actor

18  was so obvious that the issue of whether the irrigation district operated under color of state law was not

19  even discussed.").   Accordingly, the Court finds that defendants acted under color of state law.

20                                      **Deprivation of Federal Rights**

21          Next, Mr. Pistoresi must state a claim that defendants "deprived him of a right, privilege, or

22  immunity secured by the Constitution or laws of the United States." *Kildare*, 325 F.3d at 1085.   Mr.

23  Pistoresi asserts that his "opinions, votes, and communication choices are an exercise of free speech,

24  which is protected."   This Court previously ruled that the "opinions expressed by the MID Board

25  members, their votes, and their communication choices, are an exercise of their free speech, which is

26  protected activity." Order to Dismiss at 15 (discussing protected speech under anti-SLAPP statute).

27  However, as described more fully below, Mr. Pistoresi's FAC does not implicate the freedom of speech

28  principles guaranteed by the First Amendment.

1   Mr. Pistoresi's allegations do not focus on whether defendants prevented Mr. Pistoresi from

2   speaking on issues of public concern, expressing opinions, or voting. Rather, Mr. Pistoresi argues that

3   "as an elected official," he had a "right to be at board meetings." Opp. at 14. Mr. Pistoresi's position

4   becomes clear in his opposition as he contends,

5        because Pistoresi was an elected official, Defendants had no authority to preclude
     Pistoresi from attending meetings. Moreover, Defendants were aware of the difference

6        between Pistoresi has a Board Member and as a private citizen...they were aware of the
     rights to be at Board Meetings as a Board Member...and of the general right to be at

7        Board Meetings held at MID property...denying Pistoresi access to Board Meetings was
     not a prudent course of action...and was not an appropriate course of action against an

8        elected official.

9   Opp. at 14. *See also*, Opp. to Mot. Strike at 1 ("Defendants are being sued because they prevented

10  Pistoresi from exercising his constitutional rights to speak on issues of public concern, attend or

11  otherwise participate in meetings of the MID Board); FAC ¶16 (Defendants actions "prevented plaintiff

12  from serving in his capacity as public official, i.e. attending meetings, engaging in public speech,

13  representing constituents, voting on MID matters, and participating in elections.")

14      Mr. Pistoresi cites to no authority that as an elected official, he has a Constitutional right to be

15  at the board meeting. Thus, Mr. Pistoresi has not articulated a "cognizable legal theory" pursuant to

16  Section 1983. *Balisteri*, 901 F.2d at 699. Conclusory allegations of law are insufficient to defeat a

17  motion to dismiss. *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Accordingly,

18  dismissal of Mr. Pistoresi's federal claim is appropriate.[1]

19  **Motions to Strike–State Law Claim**

20  **Standard of Review**

21      Mr. Pistoresi's state law claim is a civil rights action pursuant to California Civil Code §52.1.

22

23      [1]Defendants argue that Mr. Pistoresi's free speech rights pursuant to the First Amendment "are not implicated as
a matter of law because Pistoresi only alleges that his right to opine or vote in his official capacity as a Director of MID was

24  infringed. He does not allege any infringement of his right to speak in his capacity as a private citizen." Reply, 7.
Defendant's reliance on *Garcetti v. Ceballos*, 547 U.S. 410 (2006) to support this position, however, is misplaced. In

25  *Garcetti*, the Court considered "whether the First Amendment protects a government employee from discipline based on
speech made pursuant to the employee's official duties." *Id*. at 413. Here, Mr. Pistoresi is an elected official, rather than

26  a public employee; defendants are not Mr. Pistoresi's employer, and defendants acted to prevent Mr. Pistoresi's speech, rather
than retaliate against him for his speech. Defendants cite no authority to support the position the First Amendment does not

27  apply to Mr. Pistoresi as an elected official.

28  As this claim was dismissed, the Court does not reach the issue of qualified immunity.

1  Defendants move to dismiss Mr. Pistoresi's state law cause of action pursuant to California's anti-

2  SLAPP statute, Cal. Code. Civ. P. §425.16.  The state anti-SLAPP statute applies to state law claims in

3  federal court. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th

4  Cir. 1999).

5      The anti-SLAPP statute, Cal. Code. Civ. P. §425.16, provides a procedure by which a defendant

6  can obtain early dismissal of a meritless lawsuit that arises from the defendant's exercise of

7  Constitutional rights.  "[T]he point of the anti-SLAPP statute is that you have a right *not* to be dragged

8  through the courts because you have exercised your constitutional rights." *Varian Medical Systems, Inc.*

9  *v. Delfino*, 35 Cal. 4th 180, 193 (2005) (emphasis in original).  Courts considering a motion to strike

10 pursuant to Cal. Code Civ. P. 425.156 engage in a two-step analysis.  *Jarrow Formulas, Inc. v.*

11 *LaMarche*, 31 Cal. 4th 728, 733 (2003).  "First, the court decides whether the defendant has made a

12 threshold showing that the challenged cause of action is one arising from protected activity." *Id*. at 733

13 (quoting *Equilon Enters. v. Consumer Cause, Inc*., 29 Cal. 4th 53, 67 (2002)).  Second, if "the court

14 finds such a showing has been made, it then determines whether the plaintiff has demonstrated a

15 probability of prevailing on the claim." *Id.*  "[T]he plaintiff must demonstrate that the complaint is both

16 legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable

17 judgment if the evidence submitted by the plaintiff is credited." *Navellier v. Sletten*, 29 Cal. 4th 82, 88-

18 89 (2002).

19     In ruling on an anti-SLAPP motion, the Court considers "the pleadings, and supporting and

20 opposing affidavits stating the facts upon which the liability or defense is based." Cal. Code Civ. P. §

21 425.16 (b)(2); *see also City of Cotati*, 29 Cal.4th at 79.  The Court may consider any evidence "that

22 would be admissible at trial." *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*, 99 Cal. App. 4th 1179,

23 1188 (2002).  For this motion, the Court properly considers all admissible evidence presented by both

24 parties, including the exhibits described above.

25                    **Arising From Protected Activity**

26     As discussed above, the first step in an anti-SLAPP analysis is for the defendants to make an

27 initial prima facie showing that Mr. Pistoresi's action "aris[es] from" activity protected by the anti-

28 SLAPP statute. *Brill Media Co. v. TCW Group, Inc.*, 132 Cal. App. 4th 324, 329 (2005).  "[T]he critical

12

1   point is whether the plaintiff's cause of action is *based on* an act in furtherance of the defendant's right

2   of petition or free speech...in connection with a public issue." *City of Cotati v. Cashman*, 29 Cal. 4th 69,

3   78 (2002) (emphasis in original).  Defendants bear the burden to demonstrate that "the act underlying

4   the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." *City of*

5   *Cotati*, 29 Cal. 4th at 78.  According to Cal. Code Civ. P. §425.16(e)(4), an "act in furtherance of a

6   person's right of petition or free speech under the United States or California Constitution in connection

7   with a public issue" includes any "conduct in furtherance of the exercise of the constitutional right of

8   petition or the constitutional right of free speech in connection with a public issue or an issue of public

9   interest."

10  　　　Defendants argue that Mr. Pistoresi's action is based on protected activity.  Defendants contend

11  that in the FAC, Mr. Pistoresi complains of the MID Board's vote to suspend him temporarily following

12  his altercation with Mr. Turner, and the steps the MID Board took to communicate that decision to him.

13  Defendants point to two cases, and this Court's Order to Dismiss, to support their position that the

14  activity described in the FAC is protected under the anti-SLAPP statute.

15  　　　In *Shroeder v. Irvine City Council*, 97 Cal. App. 4th 174 (2002), the appellate court noted that,

16  insofar as the plaintiff's action sought relief against individual city council members in voting to pass

17  a challenged program, "the basis for that liability was premised on their *vote* in favor of adopting the

18  [challenged] program, and voting is conduct qualifying for the protections afforded by the First

19  Amendment." *Id.* at 183 n.3 (emphasis in original); *accord, Miller v. Town Hall*, 878 F.2d 523, 532 (1st

20  Cir. 1989) (holding that "the act of voting on public issues by a member of a public agency or board

21  comes within the freedom of speech guarantee of the first amendment...There can be no more definite

22  expression of opinion...").  Defendants contend that Mr. Pistoresi's action is based on the MID Board

23  member's vote to suspend him temporarily as a director, and that vote is protected activity.

24  　　　In addition, defendants argue that in *Vergos v. McNeal*, 146 Cal. App. 4th 1387 (2007), the court

25  expanded the breadth of "protected activity" afforded under the anti-SLAPP statute, and found it to

26  include the "hearing, processing, and deciding" of an internal employee grievance.  The *Vergos* court

27  held that "the hearing process, and deciding of grievances (as alleged in the complaint) are meaningless

28  without a communication of the adverse results." *Id* at 1397.  Thus, the motion to strike was granted

13

1    properly, as it was based on the "communicative conduct in denying plaintiff's grievance." *Id*.

2    Defendants argue that  MID's decision to suspend

3         Moreover, defendants contend that this Court already determined that the "activity alleged in Mr.

4    Pistoresi's FAC is protected.  In this Court's Order to Dismiss, this Court ruled:

5         Mr. Pistoresi challenges the MID Board members' votes and expressions of opinion on
         a matter of public concern–the El Pico Ranch water bank...The opinions expressed by the
6         MID Board members, their votes, and their communication choices, are an exercise of
         their free speech, which is protected activity.

7

8    *Id*. at 15.

9         Mr. Pistoresi concludes that "defendants' argument is void of logic if the purpose of the Anti-

10   SLAPP statue is to 'protect' the rights of all citizens to speak out on issues of public concern," although

11   he offers no legal authority to support his conclusion.  Mr. Pistoresi then poses the following question:

12   "How can three (3) members of a five-member, publicly elected, board of directors claim the benefits

13   of the Anti-SLAPP statute when they act to 'prevent' another member of the same board from attending,

14   speaking at and otherwise participating in board meetings when matters of public concern are under

15   consideration?"  Mr. Pistoresi's question apparently ignores defendants' arguments in their opening

16   points and authorities discussed above, and Mr. Pistoresi's opposition leaves unaddressed defendants'

17   positions.  Moreover, Mr. Pistoresi relies on, rather than opposes, this Court's previous ruling to argue,

18   "As the Court previously recognized, a MID Board member's opinions, votes, and communication

19   choices are an exercise of the member's free speech, which is protected." Opposition, 8:23-25 (arguing

20   that defendants' suppression of this opinions, speech, and ability to vote as a Board member violated his

21   free speech).

22        Mr. Pistoresi's action is based on defendants' vote to suspend Mr. Pistoresi as an MID Board

23   director and subsequent exclusion of Mr. Pistoresi from the MID Board meetings.  Mr. Pistoresi alleges

24   that Mr. Bursey, Mr. Janzen, and Mr. Cavallero "voted to suspend" him as a member of the MID Board.

25   FAC ¶11.  After they voted to suspend him, Mr. Janzen "wrote a letter to plaintiff stating that plaintiff

26   was suspended from the Board and indicated that plaintiff would not be allowed to attend Board

27   meetings thereafter."  *Id*.  Mr. Pistoresi asserts that defendants actions in suspending him as an MID

28   Board director deprived him of civil rights by "prevent[ing] plaintiff from serving in his capacity as

1   public official, i.e. attending meetings, engaging in public speech, representing constituents, voting on

2   MID matters, and participating in elections." FAC ¶16.

3   Mr. Pistoresi's action is based on protected activity to the extent that it is based on MID's

4   decision to suspend Mr. Pistoresi from the MID Board and to exclude him from meetings until the

5   investigation was complete.  Mr. Bursey, Mr. Janzen, and Mr. Cavallero voted to suspend Mr. Pistoresi

6   as an MID Board member by voting in favor of MID Board Resolution 2007-08. As the court recognized

7   in *Shroeder*, 97 Cal. App. 4th at 183, insofar as Mr. Pistoresi's action seeks relief against the

8   individually-named MID Board members for voting to pass Resolution 2007-08, "the basis for that

9   liability was premised on their *vote* in favor of adopting the [challenged] program, and voting is conduct

10  qualifying for the protections afforded by the First Amendment."  Mr. Pistoresi's allegations are also

11  similar to the activity found to be protected in *Vergos*, 146 Cal. App. 4th 1387.  Mr. Pistoresi's action

12  against MID is based on MID's approach to handling its internal employee grievances.

13  Further, defendants' vote to suspend Mr. Pistoresi was "in connection with a public issue or of

14  public interest," as required by the anti-SLAPP statute.  A "public issue or an issue of public interest,"

15  as understood in an anti-SLAPP context, includes "not only governmental matters, but also private

16  conduct that impacts a broad segment of society and/or that affects a community in a manner similar to

17  that of a governmental entity." *Damon v. Ocean Hills Journalizm Club*, 85 Cal. App. 4th 468, 479

18  (2000).  MID's decision to suspend Mr. Pistoresi as a director is a public issue.  *Id.* (statements about

19  homeowners' association  manager's competency to manage the association is a public issue within

20  meaning of anti-SLAPP statute).  Mr. Pistoresi's suspension was also a matter within the "public

21  interest."  A statement or activity is "in the public interest" when it involves a person or entity in the

22  public eye, or a topic of widespread concern. *Rivero v. American Fed'n of State, County, and Mun.*

23  *Employees, AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003).  Having served on the MID Board for 14

24  years, Mr. Pistoresi was a public figure in the community.  Mr. Pistoresi's suspension from the MID

25  Board became a topic of interest, prompting the local newspaper to run an article on the employment

26  injunction action. *See* Madera Tribune Article.  Accordingly, defendants establish that Mr. Pistoresi's

27  claim is based on protected activity as defined by Cal. Code Civ. P. §425.16(e)(4).

28  ///

15

1                                     **Probability of Prevailing on the Merits**

2         Because defendants met their burden to show that Mr. Pistoresi's claim arises from protected

3 activity, the burden shifts to Mr. Pistoresi to demonstrate a probability of prevailing on the merits.

4 *Navarro v. IHOP Properties*, 134 Cal. App. 4th 834, 839 (2005).  To do so, Mr. Pistoresi must make

5 a prima facie showing of facts that would, if proved at trial, support a judgment in his favor.  *Chavez v.*

6 *Mendoza,* 94 Cal. App. 4th 1083, 1087 (2001).  To establish a probability of prevailing, Mr. Pistoresi

7 "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie

8 showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."

9 *Navellier*, 29 Cal. 4th at 88-89.  The issues in an anti-SLAPP motion are framed by the pleadings.

10 *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 655 (1996), but Mr. Pistoresi may not rely

11 solely on his complaint. Instead, the proof must be made upon competent admissible evidence.

12 *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1010 (2001).  In reviewing Mr. Pistoresi's

13 evidence, the Court does not weigh it; rather, it simply determines whether the Mr. Pistoresi has made

14 a prima facie showing of facts necessary to establish his claim at trial. *Paulus v. Bob Lynch Ford, Inc*.,

15 139 Cal. App. 4th 659, 672-673 (2006).

16         California Civil Code section 52.1(b) allows Mr. Pistoresi to sue for damages if defendants

17 interfered, or attempted to interfere, "by threats, intimidation, or coercion, with the exercise or enjoyment

18 of [his] constitutional or statutory rights." *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 841

19 (2004).  Accordingly, to state a claim pursuant to Cal. Civ. Code 52.1, Mr. Pistoresi must show that there

20 was interference with his constitutional or statutory rights.  "Without any violation, there is no conduct

21 upon which to base any claim under Civil Code section 52.1." *Thompson v. County of Los Angeles*, 142

22 Cal. App. 4th 154, 173 (2006).

23         In opposition to this motion, Mr. Pistoresi offers no evidence to support his allegations regarding

24 threats or intimidation.  Mr. Pistoresi alleges that defendants interfered with his constitutional rights by

25 "threats" and "intimidation" when MID hired a security company to prevent Mr. Pistoresi from entered

26 the building during an MID Board meeting. FAC ¶¶12, 17.  Mr. Pistoresi alleges that defendants, by so

27 instructing the security guards, threatened to use physical force against Mr. Pistoresi to prevent him from

28 participating in the MID Board meeting.  *Id*.  Mr. Pistoresi's scant opposition relies solely on the

1    allegations of the complaint.

2         To satisfy his burden under the second prong of the anti-SLAPP statute analysis, however, Mr.

3    Pistoresi cannot rely solely on an unverified complaint. *Dupont Merck Pharmaceuticals Co. v. Superior*

4    *Court (Newman)*, 78 Cal. App. 4th 562, 568 (2000).  As the Court reasoned:

5              It would defeat the obvious purposes of the anti-SLAPP statute if mere allegations in an
               unverified complaint would be sufficient to avoid an order to strike the complaint.
6              Substantiation requires something more than that. Once the court determines the first
               prong of the statute has been met, a plaintiff must provide the court with sufficient
7              evidence to permit the court to determine whether "there is a probability that the plaintiff
               will prevail on the claim." (§ 425.16, subd. (b)(1).)
8

9    *Id*.  By failing to substantiate his claim that defendants threatened him, Mr. Pistoresi fails to establish

10   a probability of success on the merits of his Cal. Civ. Code §52.1 claim.  Accordingly, this Court grants

11   defendants' anti-SLAPP motion.

12                                        **Leave to Amend**

13        When granting a motion to dismiss, a court generally grants a plaintiff leave to amend, even if

14   no request to amend the pleading was made, unless amendment would be futile. *Cook, Perkiss & Liehe,*

15   *Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).  Here, Mr. Pistoresi does not

16   request leave to amend.  The Court notes further that in its Order to Dismiss, this Court granted leave

17   to amend under the following considerations and conditions:

18             This Court cannot determine that amendment of Mr. Pistoresi's complaint would be
               futile in its entirety, because, as discussed more fully above, Mr. Pistoresi's complaint
19             fails to comply with Rule 8(a).  Thus, this Court cannot determine what claims Mr.
               Pistoresi attempts to state or, whether Mr. Pistoresi is able to state a claim successfully.
20             Mr. Pistoresi is granted leave to amend his complaint, but is cautioned that he should not
               base his amended complaint on facts determined in this order to be protected activity.
21             An amended complaint that includes allegations herein adjudged to be barred by
               California's anti-SLAPP statute would be futile and subject to sanctions.  Caution is
22             suggested in determining whether or not to file an amended complaint.

23   *Id*. at 17.  As Mr. Pistoresi's amended complaint is again subject to anti-SLAPP dismissal, this Court

24   find that further amendment would be futile.  Accordingly, Mr. Pistoresi's complaint is dismissed

25   with prejudice.

26   ///

27   ///

28   ///

                                          17

**<u>CONCLUSION AND ORDER</u>**

For the foregoing reasons, this Court:

1.     GRANTS defendants' motion to dismiss (Doc. 46);

2.     GRANTS defendants' motion to strike (Doc.51);

3.     DENIES as moot defendants' motion to strike (Doc.53); and

4.     DIRECTS the clerk of Court to close this action.


IT IS SO ORDERED.

**Dated:     January 30, 2009**                    /s/ Lawrence J. O'Neill
                                                           UNITED STATES DISTRICT JUDGE